IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HUBBARD, | HONORABLE ANNE E. THOMPSON |
| Petitioner, | |
| v. | Civil Action No. 14-7258 (AET) |
| STEPHEN D'ILIO, et al., | **OPINION** |
| Respondents. | |

**RECEIVED**

**JUN 13 2018**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

APPEARANCES:

Frank Hubbard, Petitioner *pro se*
47656/997956
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

Christopher C. Josephson, Deputy Attorney General
Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
    Attorney for Respondents Stephen D'Ilio, Attorney General
    of the State of New Jersey, and New Jersey Parole Board

**THOMPSON, District Judge:**

## I.    INTRODUCTION

Petitioner Frank Hubbard ("Petitioner") has submitted a petition, *pro se*, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Am. Pet., ECF No. 3.) Respondents Stephen D'Ilio, Attorney General of the State of New Jersey, and New Jersey Parole Board (collectively "Respondents") oppose the petition. (Answer, ECF No. 11.) For the reasons stated herein,

the Court concludes that it cannot grant the petition and that
no certificate of appealability is warranted.

**II.   BACKGROUND**

On July 6, 1982, the New Jersey Superior Court sentenced
Petitioner to a term of life imprisonment.[1]   (*See* July 6, 1982 J.
of Conviction, ECF No. 11-4 at p. 45.)   Petitioner has been
incarcerated since that time.   Petitioner was denied parole for
the first time in 2006.   In 2012,[2] the New Jersey Parole Board
(the "Board") again denied Petitioner parole.

It is the Board's 2012 parole denial which Petitioner is
challenging in this § 2254 matter.   Petitioner principally
argues that the Board impermissibly considered and emphasized
Petitioner's pre-1982 criminal history and pre-2006 history of
institutional infractions when it denied him parole in 2012.[3]

---

[1]  As further explained by the New Jersey Superior Court,
Appellate Division, "[i]n April 1982, a jury found [Petitioner]
guilty of murder and robbery [as a result of his involvement in
the June 1981 robbery of David O'Neil, during which Mr. O'Neil
was shot and killed].   [Petitioner] was sentenced to life
imprisonment on the murder conviction with a twenty-five-year
mandatory minimum."   *Hubbard v. New Jersey State Parole Bd.*, No.
A-0205-12T2, 2014 WL 901933, at *1 (N.J. Super. Ct. App. Div.
Mar. 10, 2014).

[2]  Although the relevant parole proceedings began in 2011, the
Board's final decision denying Petitioner parole occurred in
2012.

[3]  Petitioner's habeas petition presents two formal grounds.   In
Ground One, Petitioner argues that the Board violated the ex
post facto provisions of the Constitution when it considered
Petitioner's pre-2006 actions in rendering its 2012 parole

Initially, this Court notes that the Board's authority to consider Petitioner's pre-2006 actions is the result of a 1997 amendment deleting the word "new" from § 30:4-123.56(c) of the New Jersey Parole Act of 1979 (the "Parole Act"). *Hubbard v. New Jersey State Parole Bd.*, No. A-0205-12T2, 2014 WL 901933, at *2 (N.J. Super. Ct. App. Div. Mar. 10, 2014). As explained by the New Jersey Superior Court, Appellate Division:

Prior to 1997, [N.J. Stat. Ann. §] 30:4-123.56(c) addressed the criteria for considering parole after an initial denial:

An inmate shall be released on parole on the new parole eligibility date unless *new* information . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.

In 1997, the [New Jersey] Legislature adopted various amendments to the parole law, including an amendment deleting the word 'new' from [§ 30:4-123.56(c)], permitting the Board to consider *any* information at the subsequent hearing. That amendment was enacted to allow the Board to weigh all relevant information in an inmate's record when considering that inmate's parole eligibility at second and subsequent hearings.

Another amendment modified the criteria for denial, changing it from "substantial likelihood that the inmate will commit a crime . . . if released on parole" to "has failed to cooperate in his or her own rehabilitation or . . . there is a reasonable expectation that the inmate will violate conditions of parole[.]"

---

denial. In Ground Two, Petitioner asserts that the Board improperly based its parole denial on misinformation in a 2006 letter from the Camden County Prosecutor's Office. Both of these claims will be discussed in further detail below.

3

*Id.* at *2 (emphasis added) (citations omitted). In other words, as a result of these amendments, § 30:4-123.56(c) of the Parole Act, now reads, in pertinent part, as follows:

> An inmate shall be released on parole on the new parole eligibility date unless ~~new~~ information . . . indicates by a preponderance of the evidence that ~~there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time~~ the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole imposed . . . if released on parole at that time.

N.J. Stat. Ann. § 30:4-123.56(c) (language stricken by the 1997 amendments included).

Against this statutory backdrop, the Appellate Division summarized Petitioner's relevant parole proceedings as follows:[4]

> [Petitioner] was first considered for parole in 2006. Parole was denied and [Petitioner] received a ninety-six-month [Future Eligibility Term ("FET")]. The panel explained, "after twenty-six (26) years of incarceration, you have not shown the requisite amount of rehabilitative progress in reducing the likelihood of future criminal activity."
>
> {Petitioner] was again considered for parole in September 2011. The hearing officer referred the matter to a Board panel for a hearing. [Petitioner] appeared before a two-member Board panel in November 2011. The panel denied parole for the following reasons: [Petitioner's] prior criminal record; the nature of [Petitioner's] crimes were increasingly more serious; he was incarcerated for multi-crime convictions; his parole had been revoked in the past for commission of a new

---

[4] State court factual findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As Petitioner has not rebutted the factual findings of the Superior Court of New Jersey by clear and convincing evidence, this Court will rely on those findings.

4

offense; [Petitioner's] prior incarceration and a prior opportunity of parole failed to deter his criminal activity; his institutional infractions were "numerous[,] persistent [and] serious in nature;" and [Petitioner] had displayed "[i]nsufficient problem resolution." The panel amplified the final reason as follows:

> [Petitioner was] involved in murder while on parole for murder but he appears to believe that since he didn't pull the trigger, he was less responsible for his criminal behavior. He cannot explain why he was participating in a robbery while on parole.

[Petitioner] was referred to a three-member Board panel for the establishment of an FET. In his argument for mitigation before the three-member panel, [Petitioner] again maintained that he was not the shooter during the robbery of [David] O'Neil and the prosecutor's claim to the contrary was not true. On February 1, 2012, the three-member Board panel established an FET of eighty-four months for [Petitioner].

[Petitioner] appealed to the full Board and on July 25, 2012, the Board adopted the panel decisions denying parole and setting [Petitioner's] FET of eighty-four months.

*Hubbard*, 2014 WL 901933, at *1.

This Court's review of the underlying decisions and findings of the Board in support of its 2012 parole denial confirms that the Board placed significant emphasis on, *inter alia*, Petitioner's history of institutional infractions, which the Board characterized as being "numerous, persistent, [and] serious in nature." (*See* July 25, 2012 Notice of Final Agency Decision, ECF No. 11-5 at p. 91.) In underscoring this point, the Board appears to have given little regard to the fact that

5

Petitioner has been infraction-free since May 26, 2005. (*See* Feb. 29, 2012 Notice of Decision, ECF No. 11-5 at p. 71.) The Board additionally stressed that Petitioner committed numerous crimes of violence in the years before his 1982 murder conviction, and relatedly, that Petitioner committed many of those acts after being paroled in 1974 and 1977. (*See*, *generally*, *id.* at p. 68-77.)

The Board additionally focused on the fact that Petitioner denied being the individual who shot David O'Neil during a 2012 parole hearing. (*See id.* at 73-75.) The Board appears to have emphasized this point to support its findings that Petitioner lacked insight into his criminal behavior, attempted to minimize his culpable conduct, and, ultimately, lacked sufficient problem resolution skills. (*See id.*) In so doing, the Board appears to have discounted that Petitioner also readily conceded that he participated in the robbery of Mr. O'Neil, that this represented "the biggest mistake of [his] life[,]" and that his actions on June 22, 1981 were "dumb" and "stupid." (*Id.* at 73-74.)

The Board also appears to have relied on contemporaneous information in support of its 2012 parole denial, *e.g.*, the Board's factual findings regarding Petitioner's lack of an adequate parole plan. (*See* July 25, 2012 Final Agency Decision, ECF No. 11-5 at p. 75.) Moreover, the Board's finding that Petitioner "continue[s] to remain a substantial threat to public

safety[,]" (*see id.* at p. 76), is based on Petitioner's August 11, 2011 in-depth psychological evaluation. (*See* Josephson Cert., Ex. B, ECF No. 13 at 14.)

In sum, it appears that the Board emphasized Petitioner's pre-1982 criminal record and pre-2006 institutional infraction history to find that Petitioner remained unfit for parole in 2012. Conversely, the Board appears to have given little regard to Petitioner's marked progress since his 2006 parole denial, as evidenced by his infraction-free record since May 26, 2005, and his participation in various rehabilitative programs, *i.e.*, Cage Your Rage, Thinking For a Change, and the STARS Program. (*See* July 25, 2012 Notice of Final Agency Decision, ECF No. 11-5 at p. 75.)

Petitioner appealed the Board's 2012 parole denial to the Appellate Division after the Board issued its Final Agency Decision on July 25, 2012. On appeal, Petitioner argued, *inter alia*, that "the Board improperly failed to consider "'new' information occurring after the initial denial of parole in 2006." *Hubbard*, 2014 WL 901933, at *2. In rejecting this argument, the Appellate Division expressly found: (1) "that the Board was [not] required to identify new evidence to justify denial of parole [to Petitioner in 2012;]" and (2) that the Board properly considered and relied on pre-2006 information in Petitioner's record to support its 2012 parole denial. *Id.* at

\*3, \*4.  The Appellate Division nonetheless noted that the Board
also based its decision on information which occurred after
Petitioner last appeared before the Board in 2006. *Id.* at \*3.

Ultimately, the Appellate Division found that the Board's
2012 parole denial was supported by: (1) "the severity of
[Petitioner's] criminal history, whose current murder conviction
occurred while he was on parole for another murder[;]" (2)
Petitioner's "history of forty-one disciplinary infractions,
although none since 2005[;]" (3) the results of Petitioner's
2011 psychological evaluation, which "weighed heavily in the
Board's determination to deny parole[;]" and (4) the Board's
"conclusion that [Petitioner] lacked insight into his violent
behavior and that he minimized his maladaptive actions[,]" as
evidenced by the fact that Petitioner told the Board that he did
not shoot David O'Neil. *Id.* at \*3, \*4.  The Appellate Division
also expressly noted that under the terms of Petitioner's life
sentence, he is neither entitled to "a presumption in favor of
parole" nor "primarily eligible for parole after serving [the
mandatory minimum of] twenty-five years."[5] *Id.* at \*4.  In so
doing, the Appellate Division, like the Board, failed to
acknowledge - at least in any meaningful way - that since being

---

[5]  Petitioner has failed to rebut or otherwise challenge the
veracity of any of these factual findings, and as such, this
Court must presume that these facts are correct.  28 U.S.C. §
2254(e)(1).

8

denied parole in 2006, Petitioner has remained infraction free, has actively participated in various rehabilitative programs, and otherwise appears to have markedly improved his prospects for success if paroled.

The Appellate Division issued its opinion affirming the Board's decision to deny Petitioner parole on March 10, 2014. *Id.* at *5. The New Jersey Supreme Court denied certification on October 9, 2014. *Hubbard v. New Jersey State Parole Bd.*, 101 A.3d 1080 (N.J. 2014) (table).

Petitioner initiated this § 2254 action on November 21, 2014. (*See* ECF No. 1.) Petitioner filed his amended § 2254 petition on December 24, 2014. (ECF No. 3.) Petitioner's amended pleading presents two grounds for this Court's review:

> Ground One: The [Board] violated the ex post facto laws of the United State Constitution by applying a 1997 amendment to a statute governing parole.
>
> Ground Two: In a letter to the [Board] opposing parole the prosecutor from Camden County told the board that [Petitioner] was the shooter. [The] Board relied on this misinformation.

(Am. Pet. at ¶ 12, ECF No. 3.)

Respondents filed their answer and accompanying record of state proceedings on December 1, 2015. (ECF Nos. 11 and 12.) Petitioner filed his reply on December 16, 2015. (ECF No. 16.)

### III. **STANDARD OF REVIEW**

28 U.S.C. § 2254 permits a federal court to entertain a
petition for writ of habeas corpus on behalf of a person in
state custody, pursuant to the judgment of a state court, "only
on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States." 28
U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a
state court, the writ shall not issue unless the adjudication of
the claim:

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court
precedent "if the state court applies a rule that contradicts
the governing law set forth in [Supreme Court] cases," or "if
the state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and
nevertheless arrives at a result different from [the Court's]
precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[A] state-court decision is an unreasonable application of

clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). This Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

Before turning to the merits of Petitioner's specific habeas arguments, this Court feels compelled to acknowledge Petitioner's underlying frustrations with the parole process that have led to his filing the current habeas petition.

As detailed above, in 2006, the Board denied parole to Petitioner because Petitioner had not yet demonstrated enough rehabilitative progress. In 2012, the Board again found that Petitioner remained unfit for parole. The Board's 2012 parole denial placed significant emphasis on Petitioner's pre-2006 history of institutional infractions and pre-1982 criminal record. The Appellate Division affirmed the Board's decision, and expressly noted that the Board's consideration of these facts was proper. Petitioner's marked progress since being denied parole in 2006, on the other hand, appears to have been essentially ignored. Indeed, the record before this Court

11

demonstrates that since 2006, Petitioner has made significant efforts to become a viable candidate for parole, and that the Board and the Appellate Division both deemed this undisputed truth to be largely irrelevant in the parole calculus. It therefore appears that Petitioner validly fears that no matter how much progress he makes while in custody, he will continue to be denied parole in light of the crimes he committed decades ago and institutional infractions he incurred prior to 2006.

This Court is troubled by the approach of the Board because it obscures the entire purpose of a parole review. Since 2006, Petitioner's behavior appears to have been nothing short of exemplary. Nonetheless, the Board again denied Petitioner parole in 2012, based largely on its consideration of acts, which, while admittedly abhorrent, were committed many years ago. This Court's disapproval of the Board's approach, however, is not the standard under which Petitioner's habeas claims are adjudicated. Instead, this Court is compelled to adjudicate these claims under the Standard of Review detailed above.

**A.   Ground One - Petitioner's Ex Post Facto Claim**

As noted *supra*, the word "new" was deleted from § 30:4-123.56(c) in 1997 to enable the Board to consider any information in an inmate's record when considering that inmate's parole eligibility at second and subsequent parole hearings. In Ground One, Petitioner argues that the Board's implicit reliance

12

on this amendment and express consideration of Petitioner's
entire criminal record and history of institutional infractions
to support its 2012 parole denial violates the Constitution's
prohibition on ex post facto lawmaking. (Am. Pet. at ¶ 12, ECF
No. 3; *see also* Pet'r's Reply, ECF No. 16 at Point 1.) This
Court is unable to agree.

The Constitution prohibits the federal and state
governments from passing any "ex post facto Law." *See* U.S.
Const. art. I, § 9, cl. 3; *id.* at § 10, cl. 1 (hereinafter the
"Ex Post Facto Clause"). An ex post facto law is one "which
imposes a punishment for an act which was not punishable at the
time it was committed; or imposes additional punishment to that
then prescribed." *See United States v. Brady*, 88 F.3d 225, 227
(3d Cir. 1996), *cert. denied*, 519 U.S. 1094 (1997) (quoting
*Cummings v. Missouri*, 4 Wall. 227, 325-26 (1866)). The Ex Post
Facto Clause is therefore implicated when a law "retroactively
alter[s] the definition of crimes or increase[s] the punishment
for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43
(1990) (citations omitted); *accord California Dept. of Corr. v.*
*Morales*, 514 U.S. 499, 506 n.3 (1995).

Significant authority compels this Court to conclude that
the Board did not violate Petitioner's rights under the Ex Post
Facto Clause when it considered the entirety of Petitioner's
record as a result of the 1997 amendment now being challenged by

13

Petitioner. *See Trantino v. New Jersey State Parole Bd.*, 752
A.2d 761 (N.J. Super. Ct. App. Div. 2000) (holding that this
amendment did not substantively alter the criteria for release
on parole, and thus does not violate the Ex Post Facto Clause),
*modified in part on other grounds, aff'd in part, remanded*, 764
A.2d 940 (N.J. 2001); *accord Righetti v. Sherrer*, No. 2:07-cv-
1608 (JAG), 2008 WL 4755745, at *7 (D.N.J. Oct. 28, 2008) ("this
amended provision does not violate the Ex Post Facto Clause.");
*Jenkins v. D'Amico*, 2:06-cv-2027 (JAP), 2007 WL 1797649, at *4
(D.N.J. June 20, 2007) (rejecting inmates' argument that
"because they were incarcerated for crimes that they committed
prior to the 1997 amendment, allowing the Board to consider
information [provided at earlier parole hearings] amounts to an
ex post facto imposition of punishment").

In light of the foregoing authority, this Court finds that
the Appellate Division did not unreasonably apply clearly
established federal law when it rejected Petitioner's argument
that the Board improperly failed to consider "new" information
occurring after Petitioner's 2006 parole denial, expressly found
that the Board was not required to identify new evidence to
justify denial of parole to Petitioner in 2012, and ultimately
concluded that the Board's consideration and reliance on pre-
2006 information in Petitioner's record to support its 2012

14

parole denial was proper. As such, this Court must deny habeas relief as to Ground One.

### B. Ground Two - The Board Improperly Relied on a 2006 Letter from the Camden County Prosecutor's Office

Petitioner also asserts that the Parole Board improperly relied on misinformation vis-à-vis a 2006 letter from the Camden County Prosecutor's Office indicating that Petitioner shot murder victim David O'Neil (*see* ECF No. 6 at Pa2); Petitioner, on the other hand, contends that he was merely present when Mr. O'Neil was murdered in 1981.[6] (*See* Am. Pet. at ¶ 12, ECF No. 3.)

Initially, the Court notes that it is unable to find any basis in the record to conclude that the Board expressly relied on the substantive information in this letter. Instead, this Court's review of the record leads it to conclude that the shooter/non-shooter distinction was not relied upon in the Board's decision. (*See* Feb. 29, 2012 Notice of Decision, ECF No. 11-5 at p. 74 (noting that regardless of whether Petitioner shot David O'Neil, "[he] was charged with Felony Murder due to the fact that [Mr. O'Neil] was shot and killed during the course of a robbery in which [Petitioner was] a participant.").)

---

[6] It is undisputed that Petitioner was convicted for murder as a result of Mr. O'Neil's death, however, the trial judge's order of sentence indicated that the jury found that Petitioner was not the shooter. (*See* July 6, 1982 J. of Conviction at Statement of Reasons for Sentencing, ECF No. 11-4 at p. 47.)

In addition, the implicit assumption underlying Petitioner's Ground Two claim, *i.e.*, that the Board would have paroled Petitioner but-for the Board's reliance on the 2006 letter, is rebutted by the factual findings of the Appellate Division. The Board cited a number of reasons in support of its 2012 parole denial, many of which are unrelated to the specific actions taken by Petitioner on the date of Mr. O'Neil's murder. *See Hubbard*, 2014 WL 901933, at *3, *4.

In light of the foregoing, Petitioner's Ground Two claim fails to provide any basis for this Court to conclude that Petitioner is now "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)). As such, this Court must deny habeas relief as to Ground Two.

## C. Petitioner's Request for Sealed Documents

Some of the documents which Respondents filed with their answer contain confidential information, *i.e.*, Petitioner's presentence investigation report, pre-parole medical summary, and psychological evaluation, as well as confidential remarks presented to, and made by, the Board. (*See* ECF No. 13.) On March 8, 2016, this Court granted Respondents' unopposed motion to seal these documents. (ECF No. 17.)

On December 14, 2016, this Court received a letter from Petitioner seeking clarification on the manner in which he could

obtain copies of these still-sealed documents.[7] (ECF No. 20.)

On December 23, 2016, this Court sent a letter to Petitioner explaining that "New Jersey law prohibits disclosure of the mental health records absent a court order" and that to properly request these documents, Petitioner would have to "file a formal motion . . . setting forth [the] reasons why disclosure would not 'compromise the safety of the inmate or others, or the security or orderly operation of the correctional facility.'" (ECF No. 21 (citing N.J. Admin. Code § 10A:22-2.7(d).)

On January 9, 2017, Petitioner filed a motion to obtain copies of those documents. (ECF No. 22.) Petitioner asserts that his motion should be granted because "there is no penological interest involved" and because "[d]isclosure [of these documents] is necessary to challenge any inaccurate information in the event the Court may rely on [that] information." (*Id.*) Neither of these arguments are persuasive.

First, this Court cannot agree that there is "no penological interest involved" in these documents, as all of the sealed documents ultimately speak to Petitioner's viability as a parole candidate. *See Benjamin v. Fraser*, 264 F.3d 175, 187 n.10 (2d Cir. 2001) (defining "penological interests" broadly).

_____

[7] It fully appears that Petitioner has already received a copy of the presentence report filed under seal. (*See* Josephson Decl. at ¶ 6, ECF No. 12-1.)

17

That there is indeed a compelling penological interest in these documents – including, most particularly, Petitioner's psychological evaluation and the Board's "remarks" document referencing that report – is further confirmed by the Declaration filed in support of Respondents' motion to seal. (Josephson Decl. at ¶ 7, ECF No. 12-1 ("[N.J. Admin. Code] 10A:22-2.7(d) prohibits disclosure of an inmate's mental health records to that inmate, largely because of the risk of retaliation against the evaluator.").)

This Court is similarly unable to agree that "[d]isclosure of these documents is necessary [for Petitioner] to challenge any inaccurate information contained therein *in the event the Court may rely on [that] information*." (ECF No. 22 (emphasis added).) That is because this Court's resolution of Petitioner's specific habeas claims ultimately turns on the findings set forth in the Appellate Division's 2014 *Hubbard* opinion, *i.e.*, the "last reasoned opinion" of the state court. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The substantive information in the sealed documents sought by Petitioner ultimately does not bear on that analysis.[8]

_____

[8] The Court nonetheless notes that the information in the sealed documents is entirely consistent with the summary of the Board's findings set forth in the Appellate Division's 2014 *Hubbard* opinion.

18

In light of the foregoing, Petitioner's motion to obtain copies of the sealed documents filed by the Respondents will be denied.

## D. Certificate of Appealability

A petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner has not made a substantial showing that he was denied a constitutional right. This Court does not find that jurists of reason would disagree with this Court's resolution of Petitioner's habeas claims, and therefore, this Court will deny Petitioner a certificate of appealability.

**V. CONCLUSION**

For the reasons stated above, Petitioner's habeas petition is denied and a certificate of appealability shall not issue. Petitioner's motion to obtain copies of the documents filed by Respondents under seal is denied. An accompanying Order will be entered.

June 12, 2018
Date

ANNE E. THOMPSON
U.S. District Judge

20